## THE KINAU.

### (Circuit Court of Appeals, Ninth Circuit. May 5, 1919.)

### No. 3194.

SHIPPING ⬅166(4)—INJURIES TO PASSENGER—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Evidence *held* to show that the steamship company, into the hold of whose vessel libelant, a passenger, fell, was guilty of negligence, so that libelant was entitled to recover damages for his injuries, despite libelant's testimony adverse to himself; he having been rendered at least temporarily insane by his fall.

Appeal from the District Court of the United States for the Territory of Hawaii; Horace W. Vaughan, Judge.

Libel by Natalio Peneyra, an insane person, by Adriano Borha, his guardian ad litem, against the American steamship Kinau and the Inter-Island Steam Navigation Company, Limited, bailee, claimant, and owner. From the decree, libelant appeals. Reversed, and cause remanded, with instructions to enter decree for libelant.

Natalio Peneyra, described as an insane person by his guardian ad litem, filed a libel against the steamship Kinau to recover damages for personal injuries sustained as a passenger on the steamship, which was engaged in carrying passengers for hire from Honolulu to a port on the island of Kauai. The libel alleged that on December 9, 1917, shortly after taking passage on the steamship, the second officer of the steamship ordered Peneyra to go into the steerage, and in a rough and improper manner shoved him over towards an open, unguarded, and unlighted hatchway, and he, without fault or negligence on

his part, stepped into said hatchway and fell into the hold of the steamship, and sustained serious and permanent wounds and injuries, to such an extent that he lost his reason and became insane, and that he was declared insane by a court of competent jurisdiction in the month of December, 1917, after he had received said injuries. The appellee in its answer admitted that the appellant, while on the deck of said vessel, fell into an open hatchway in the hold of said vessel, a distance of about eight feet, and struck his head on the floor or some object in said hold, and sustained some injury, the nature and extent whereof it was ignorant.

The court below made no findings of fact, but in an opinion reviewed the statements of Peneyra given in open court three days after the conclusion of the testimony offered on behalf of the parties. The court expressed the opinion that the evidence proved that Peneyra was then sane, and that the only evidence that he ever was insane was the adjudication upon which he was committed to the asylum. Treating the statements of Peneyra as declarations against his interest, the court denied his right to recover. The testimony so taken in open court was all in answer to questions by the judge, and it consisted mainly in Peneyra's answer of "Yes" to leading questions. The record shows the following:

"Q. Did you have a ticket at the time you got on board? A. I wasn't given yet a ticket. Q. Did you take your little girl on the boat with you? A. Yes. Q. Did you walk up on the upper deck? A. We did. Q. Did you leave the little girl on the upper deck? A. Yes. Q. And you went down to see about your baggage? A. Yes. Q. That's what you went down for? A. Yes. Q. Did you remember when you fell on the steamer? A. I did. Q. You remember falling? A. Yes. Q. How came you to fall? A. I was dizzy. Q. Were you facing towards the hatch when you fell? A. Yes. Q. You were facing the hatch? A. Yes. Q. Did you fall forward through the hold or hatch? A. Yes. Q. Because you were dizzy? A. Yes. Q. Did you fall backwards through it? A. No. Q. When you fell, do you remember them picking you up? A. Yes. Q. You remember them picking you up after you fell? A. I do. Q. You remember them picking you up out of the hatch and taking you back on the shore? A. Yes. Q. You remember that? A. Yes. Q. Did you know at that time they were taking you back to the shore? A. Yes. Q. Did you have them take your little girl with you? A. Yes. Q. Was the little girl taken back on shore? A. Yes. Q. How did you get back from the ship to the shore? A. The boss of the steamer ordered me to go ashore. Q. Are you crazy? A. No. Q. Have you been crazy? A. No. Q. Did you know that you were out here at the asylum? A. Yes. Q. What were you doing out at the asylum? A. I was out there simply sitting around. Q. Did you know what you were doing there? A. I was doing nothing. The American told me to go out to work, but I worked only a month. Q. When you fell on the ship, were you squatting down or were you standing up? A. At that time I was standing up; when I got dizzy, I stooped down. Q. Was the hatch open? A. Yes. Q. Was there a rope around it? A. Yes. Q. How many sides—was the rope around all four sides of the hatch? A. Yes; the rope was around all four sides. Q. When you fell in? A. Yes."

George A. Davis and J. J. Banks, both of Honolulu, T. H., for appellant.

L. J. Warren and Smith, Warren & Whitney, all of Honolulu, T. H., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). We are of the opinion that the court below erred in wholly disregarding the testimony against the appellee, and accepting the statements of Peneyra as declarations against interest, and as conclusive of the merits of the controversy. Peneyra's statements suggest their own

improbability. According to him, a man in good health, not intoxicated, becomes dizzy, stoops toward the floor, and then pitches face first into an open hatch, notwithstanding that a rope stretched 30 inches above the deck extends around the four sides of the hatch for his protection. Some portions of the statements are proven to be false by the undisputed facts in the case. Thus he stated that he had not purchased a ticket. The appellee admits that he had purchased a first-class ticket, and Aki testified that he saw the ticket in his hand. Also he stated that the rope was stretched around the four sides of the hatch when he fell in. The first officer testified that the rope was down on one side. The evidence is that, when Peneyra fell, he received a severe injury upon the head rendering him unconscious, that he was taken to a hospital, where he remained a week, showing insanity by his acts, and that he was thereupon adjudged insane and sent to an insane asylum, in which he remained four months, and from which he had been discharged only two days before his statement was taken in court. There was the evidence of one witness that while in the asylum Peneyra had no recollection concerning his fall, and denied that he had fallen while on the steamship. One of the physicians who examined Peneyra at the time of his discharge testified that he doubted his complete restoration to sanity for the reason that he found his memory "pretty hazy" as to what had occurred on the steamship.

The evidence which we think should countervail Peneyra's statements in court is the following: Peneyra was one of a group of passengers standing in the between-decks, where the boatswain was in charge. It is shown, and it is not disputed, that immediately after the accident the first officer asked the boatswain how it happened, and that the latter said, "I told them to get away, but this fellow fell down." The boatswain testified that he told the deck passengers, "Clear away!" and he motioned with his hand, and "while I was making these motions of separation to the deck passengers, this man in question fell into the hatch, and I immediately went to help him." Aki, a fellow passenger, testified that it was dark in the between-decks, that the hatch was open, and that Peneyra was there, but that he did not see him fall; that immediately after he fell the first officer said it was the boatswain's fault in not covering the hatch up. Cabache, also a fellow passenger, was present at the time when Peneyra fell, but did not see him fall. He testified that he also heard the first officer say it was the boatswain's fault. All who testified to Peneyra's condition said that his scalp was cut and bleeding and that he was unconscious when taken from the hold.

Sanchez is the only witness who testified that he saw Peneyra fall. He was a fellow passenger. He testified that the boatswain told the group of passengers to move back, because they were loading crates of chickens; that Peneyra was standing about six feet from the hatch, with his back toward the hatch; and that the boatswain raised his hands saying "Move back, you fellows!" and that Peneyra moved back and fell into the hatch. The appellee points to alleged discrepancies in the testimony of Sanchez, upon which it contends that

his testimony should be wholly disregarded. We have carefully considered that contention, and we find nothing substantial in it. One alleged discrepancy is that Sanchez testified at one time that Peneyra had his bag with him, and at another time he testified that Peneyra had no baggage when he came aboard. This apparent discrepancy disappears when Aki's testimony is considered. It indicates that Peneyra's baggage had been sent on board ahead of him, and that when he got aboard he was looking around for his baggage, and that he went from the upper deck to the between-decks to search for it. Sanchez may have been in error in testifying that Peneyra had his little girl by the hand at the time when he fell, but he had seen him holding his girl's hand when he came on board the ship, and he probably thought that the little girl was still with him when he fell. Such discrepancies as these have not the effect to discredit a witness.

It is not denied that Sanchez was standing near the boatswain at the time when the order to move back was given. He testified, and it is not disputed, that he translated it to the other Filipinos in aid of the boatswain's directions and at his request, and that while he was still so engaged Peneyra, who stood near the hatch, stepped back and fell in. If there is any testimony here which should be scrutinized on account of interest or motive to color it, it is not that of the fellow passengers of Peneyra, but that of the officers of the appellee. They, however, dispute none of the testimony as to the essential incidents above adverted to. The accident occurred at about the time of sunset. The electric lights had not been lit in the between-decks. Witnesses for the appellee, all of whom were its employés, testified that it was light. One of them testified that objects were plainly discernible, except in one portion at some distance from the hatch. The witnesses for the appellant testified that the light was dim. We reach the conclusion that the light was not sufficient to reveal clearly the danger of the open hatch.

It seems evident that, if Peneyra had recovered his sanity at the time when he made his statements in court, his memory had been so impaired, by the blow upon the head which caused his insanity, that little or no reliance can be placed in it. If, indeed, he had a spell of dizziness, it is very remarkable that it occurred at the very moment when he stepped back in compliance with the boatswain's order. The evidence in the case convinces us that the appellee was guilty of negligence, and that the appellant is entitled to recover damages therefor in the sum of $600.

The decree is reversed, and the cause is remanded to the court below, with instructions to enter a decree for the appellant in the sum of $600 and costs.